Next on our agenda this morning is Bayon v. Berkebile. Ready to hear Bayon v. Berkebile. Ms. Gerber. May it please the Court, I'm Tara Gerber, I represent the Police Officer Defendant Appellants who ask this Court to reverse the denial of their qualified immunity defense because it was not beyond debate that officers must wait while a violent felon advances toward them with what they perceive as a gun and hope for the best. It cannot be said that every reasonable officer should have known that a compliant suspect, regardless of the totality of the circumstances, has the right to be free from deadly force. This case is easily distinguishable from Smith and the case is cited in Smith because immediately before Bayon was shot, officers saw what they perceived to be a gun. That fact was not true in Smith. And, in addition, in Smith, the suspect was going to a position of being subdued. Before we get too far into your view of the merits, we do have a... I'm sorry, Your Honor, I turned up my volume. Can you repeat, please? Before we get too far into your view of the merits, we do have a jurisdictional question. The District Court denied the motion, not on the law, but on the facts and said there was a disputed issue of material fact. And under the Supreme Court's holding in Johnson against Jones, we can't question that on appeal. We can't find immunity unless there is legal uncertainty without any factual dispute. So why is there anything, given the District Court's factual position, why is there anything for us to consider? The defendants agreed to all of Bayon's facts to the extent they're supported by the record. And so the defendants don't contend that there are any disputes. I must say, I find that hard to accept. One of your arguments for immunity is that the defendant, well, Mr. Bayon, moved aggressively toward the officers, and that's why they shot him. If you look at his deposition testimony, he denies taking more than a step or two and denies that he was aggressive toward any officer. So how is that an undisputed fact? Well, it's not disputed. The defendants are willing to concede that Bayon moved unaggressively in whatever manner he says that he did. But what matters is that the court can decide based on the undisputed facts that the District Court found, which were that Bayon was walking forward toward an officer. Surely you're not saying that anybody who gets out of a car and takes one step can be shot. But I don't think it's undisputed on this record that Bayon took more than one step. Well, it's correct, Judge. Of course, we would never say that anyone who gets out of a car can be shot. That would be inconsistent with this court's rulings that consider the totality of the circumstances. In Horton v. Pobjecki tells us that the court needs to consider the amount and quality of the information that the officers had. And so the District Court found several facts that were undisputed, including those grand factors, the severity of the crime. The fact that he was suspected of two attempted robberies in two days. The fact that officers knew he committed that second serious crime of fleeing in a vehicle. Officers knew that robberies are violent crimes that often involve weapons. And the District Court found Bayon took those steps forward and the District Court found all three officers saw what they believed to be a gun in Bayon's waistband. There was additional testimony. Each of the officers testified that Bayon was shot while he was advancing toward an officer. That's undisputed. That's the only thing that's undisputed. Your brief says it is undisputed that he was advancing aggressively toward one officer. His own deposition says I took a step but wasn't aggressive. So it can't be undisputed that he was advancing aggressively. The defendants agreed that he did not have to be advancing aggressively, Your Honor, but the District Court did find... And then we come back to your contention that anybody who gets out of a car and takes one step may be shot. And I must say, I don't find that a very attractive legal principle. It's definitely not, Your Honor. And that's not the officer's position. The officer's position is that they had a reasonable belief that Bayon was armed just as the officers in Smith reasonably believed that he was armed. However, the difference between Bayon and Smith was that we had all those similar grand factors, the severity of the crime and the fleeing. Ms. Gerber, don't the District Court's findings, though, and the testimony draw into question as to whether or not that belief was reasonable? Specifically, Mr. Baten testified here that he heard the officers say, Show me identification. And that he was reaching into his back pocket to do exactly what they directed him to do. And although the officers... There's testimony that each officer believed he was reaching for a gun. Given that testimony and the court's findings, isn't there an issue of fact as to whether or not the officer's belief that he was reaching for a gun was reasonable? The belief that he had a gun was reasonable and it's separate from the undisputed... I understand you're arguing it was reasonable and a jury might very well find that it was reasonable. But the question for purposes of the qualified immunity is, isn't there an issue of fact in light of Mr. Baten's testimony, Mr. Bayon's testimony, as to whether or not that belief was reasonable? Because he's saying, I was surrendering. I was doing exactly what I was told. They told me, show your identification. My identification was in my back pocket. I reached in my back pocket to do it. And therefore, it was not reasonable for the officers to think that I was reaching for a gun. And by the way, I didn't have a weapon. So again, a jury might agree with you, but for purposes of qualified immunity in our as to the officer's reasonable belief. Because being compliant is different than being subdued. And the cases cited in Smith indicate that something more than compliance is required. I was on Smith, so I'm very, very familiar with that. And there was a video there that we were able to look at and see. So I think that is a different bird than we have before us here. Well, all of the cases cited in Smith are distinguishable from Smith. The Smith court cited Gant, where the suspect was standing still and the officer saw no weapons. Miller v. Gonzalez, the suspect was subdued, lying on the ground, spread eagle. In Strand, the suspect was backing up. And this court said the officer had no reason to believe he was armed. In Alicia, the suspect was in a pool with his hands up. In Becker, the suspect was arrested a month after he threatened to kill someone with a knife. And the police officer didn't even look at him before he sticked his dog on him. In Ellis, an officer shot a robbery suspect that had no reason to believe he was armed. None of those facts are present here. And so whether or not the officers agree that he was compliant, and they do, the separate issue is that something more than compliance is required. And this court has indicated that in at least five cases. Johnson, Horton, Strand, Sheehan, and Gonzalez. And in those cases, the court indicates that it can decide as a matter of law when a suspect is subdued. For example, in Johnson, the officer reasonably allowed his dog to continue biting the suspect after he raised his hands and said, I surrender, for five to ten seconds until, quote, the suspect was subdued in handcuffs. So raising hands and saying, I surrender, is not enough. Gonzalez tells us that a suspect face down, spread eagle, is subdued. Sheehan tells us that a suspect who's advancing toward officers with a knife and is on the ground and has been shot is still not subdued. So when we compare all those different cases, we see, even with Smith, that something more than compliance is required. Smith was compliant. Bayon was compliant. But Smith was moving toward a position on the ground, like Gonzalez, of being subdued. And Bayon was advancing toward an officer. The district court found he took two or three steps forward. That's an undisputed fact. But the question was whether or not there was an issue of fact, not a factual finding. And the officers answered, no, there's no question. The question was, and in Smith, it was whether or not there was an issue of fact as to him being subdued. There wasn't a factual finding that he was subdued. And I don't see how this is any different than that. Well, to the extent that there is a question as to whether someone is subdued, it can't be said that every reasonable officer would know that Bayon was subdued. It can't be said that it's beyond debate if there's a question as to what actions constitute being subdued. There's no question of fact as to the actions. If there are no further questions, I'd like to reserve the rest of my time. Certainly, counsel. Ms. Wheeler. May it please the court, my name is Janet Wheeler, and I represent the affiliate Mr. Bayon. Today, we would ask this court to dismiss this appeal for lack of jurisdiction because the legal and factual arguments underlying the officer's qualified immunity are not separable. As this court established in Smith v. Finkley, it is clearly established that shooting an unarmed surrendering suspect who was not actively resisting in the moments before a shooting violates the Fourth Amendment, and that the totality of the circumstances to justify a seizure and use of deadly force includes the period just before and during this shooting. And here, in the time frame before and when the officer shot Mr. Bayon, there are factual disputes that were identified by the district court and that are highly contested by Mr. Bayon about how reasonable it was to believe that he was armed, how much of a threat Mr. Bayon posed, and how actively he was resisting at the time he was shot. And because those factual disputes exist, this court's jurisdiction is lacking. Whether or not the officer's belief that Mr. Bayon was armed is unreasonable, and there's a dispute of material fact there. The officers had no specific information that a weapon was used in his robbery. All they knew was that robberies are sometimes violent crimes. And then when Mr. Bayon stepped out of the vehicle, he had his hands raised in the air, and no officer reported seeing any weapon in his hands. Now, the officers do contend that Mr. Bayon had a weapon on his person. However, that's a contested fact. There is a photograph of a black cylindrical object. However, a photograph is not conclusive evidence that Mr. Bayon possessed that weapon, and it does not ultimately lead to the conclusion that Mr. Bayon was armed with that. And so because of those facts in dispute, there's a question about whether or not Mr. Bayon was armed. And then to go to the question of whether or not Mr. Bayon posed a threat at the time of the shooting because he was advancing towards Officer Myers, this court has held many times that summary judgment in an excessive force case is often inappropriate because a suspect's actions are suspect to different interpretations. And it's often those different interpretations that are tied to an officer's qualified immunity question. And so as the court noted in Smith v. Finkley, that suspect there was lunging forward, and this court held that those actions could be interpreted in different ways, and that was caught on body camera footage. So if something that is caught on body camera footage that is very similar to the facts here can be interpreted in different ways, then there is a dispute of material facts here on whether or not Mr. Bayon was an immediate threat to these officers. Further, regarding the steps that Mr. Bayon may have taken towards the officers, another factor that this court should consider is the distance between the officers and Mr. Bayon, and that is something that this court has looked at in several cases when determining whether or not an officer is an immediate harm when a suspect is moving towards them. Here, Officer Myers was 25 feet away from Mr. Bayon when he took maybe two or three steps forward, and this is different than in the Seiler case that the officers have cited because there the suspect was maybe a car length away from the officer, and then this is also different from the Davis case that has been cited by the officers because there was maybe 10 feet between the officer and the suspect. So this 25 feet in one or two steps, this is not an imminent harm to the officers, and so that is a material fact here. And then Mr. Bayon, how actively he was resisting. For purposes of this appeal, the officers have conceded that Mr. Bayon was in compliance. However, they contend that he was not subdued and that there is no material fact of issue there, but that's not true because if Mr. Bayon was in compliance, if his hands were raised in surrender, if he was reaching for his identification, he was under the officer's control. He was no longer trying to flee the scene. He had stopped, and so as the district court noted, any suspicion that Mr. Bayon was armed and that he was a threat to the officers diminished once Mr. Bayon left his vehicle. And so before the officer's legal argument here for qualified immunity can be decided, the material factual disputes that are identified by the district court and by Mr. Bayon, they have to be resolved, and to do so would require this court to go beyond its jurisdiction on this interoperatory appeal. Thank you. Thank you, Ms. Wheeler. Anything further, Ms. Gerber? Yes. Horton and Sherrod tell us that whether a suspect has a weapon has no place in the court's analysis when determining qualified immunity, and that's because the officers are not required to consider things that they would learn after the fact. The question is whether officers reasonably believe a suspect to have a weapon. You can see Lockby City of Litchfield, Ford v. Childers, where officers were entitled to believe that the suspect had a gun. I'm not aware of any case where a suspect who didn't have a weapon precluded the officer's reasonable belief. And the district court found several facts that were undisputed that would support that, the officer's reasonable belief, even if he didn't have a weapon, that Officer York had been trained that vehicle chases often end with a suspect confronting officers with a weapon. Officer Myers believed Bayon was digging around for something inside the vehicle. Officer York heard an officer yell, gun, when Bayon stepped out of the vehicle. So there are many reasons why the officers reasonably believed that he did have a weapon, regardless of whether he did. Again, what's important is the amount and quality of the information known to the officers. The case can be decided on those undisputed facts. Thank you. Thank you, Ms. Gerber. The case is taken under advisement.